# Barrett *v.* City of Mobile, *et al.*

*Action for Trespass and Trover.*

1. *Action against city of Mobile; presentation of claim necessary to maintain suit.*—Under the charter of the city of Mobile, providing that no claim against the said city "shall be sued on until a statement thereof, giving date of accrual, name and residence of the original claimant and assignee, if any, circumstances and amount, shall have been filed with the clerk for consideration of the general council, and either rejected by them or held for sixty days without action," (Acts of 1896-97, p. 542), no suit can be maintained against said city without first presenting the claim as thus provided by the charter; and it is necessary that the complaint in such action should aver a compliance with such statutory requirements.

2. *Same; same; claims arising from tort within provision of statute.*—The requirements of the charter of the city of Mobile "that no claim against the city of Mobile shall be sued on" until a statement thereof, in accordance with the directions contained in said charter, shall have been filed with

[Barrett v. City of Mobile.]

the clerk for consideration of the general council and either rejected by them or held without action for sixty days, relate to a demand arising in tort as well as *ex contractu.*

3. *Trespass; justification under legal process must be specially pleaded.*—In an action of trespass *de bonis asportatis,* where the defendant undertakes to justify the alleged trespass under legal authority, such defense must be specially pleaded, and can not be proved under the general issue; but under the plea of the general issue, the fact that the defendant acted under supposed legal authority, may be proven for the limited purpose of mitigating or preventing exemplary damages.

4. *Trover; defense of justification under legal authority admissible under general issue.*—In an action of trover, a defense that the conversion or destruction of the property of the plaintiff involved in the suit was under legal authority and direction, may be proven under the plea of the general issue in bar of the action; and it is not necessary to set up such defense by special plea.

5. *Same; same; admissibility of evidence.*—In an action of trover to recover damages for the alleged conversion of a mule, where the defendant pleads the general issue, it is competent for the defendant to introduce evidence to show that the animal was killed in pursuance of a reasonable police regulation in promotion of public health.

6. *Action to recover for killing mule under direction of health officer; general affirmative charge.*—In an action against a city and the city health officer to recover damages for the killing of a mule, where there is evidence introduced for the defendant showing that said mule had an infectious and contagious disease, which was dangerous to man and beast, and that the mule was ordered to be killed by the health officer of the city wherein it was kept, but there was no evidence introduced to show that there was any regulation made by the city or special authority conferred upon said health officer in any legal mode, giving him the power to order the destruction of the animal, such killing is shown to have been unjustified, and the plaintiff is entitled to the general affirmative charge.

APPEAL from the Circuit Court of Mobile.

Tried before WILLIAM S. ANDERSON.

This action was brought by the appellant, Kate C. Barrett, against the City of Mobile and Rhett Goode. The complaint as originally filed contained three counts.

The first count was for trespass, in the Code form, for wrongfully taking one mule, the property of the plaintiff. The second count was in trover and was in Code form for the wrongful conversion by the defendants of one mule. The third count of the complaint was a special count, and was in words and figures as follows: "3d. Plaintiff claims of the defendants one hundred and twenty-five dollars damages for that on to-wit, the 8th day of August, 1898, she was the owner of a mule, of the value of one hundred and twenty-five dollars. Plaintiff avers that the municipal Code of the city of Mobile provides that 'Upon the complaint of the health officer that a horse has glanders and is dangerous to the health of man or beast, or that any animal is diseased and thus dangerous, or any object is a nuisance and dangerous to health and safety of man or beast in the city, the recorder shall take evidence of two disinterested and reputable citizens, and may thereupon, if satisfied such complaint is well founded, in his discretion issue a warrant directed to any police officer requiring him to enter upon the premises where such animal or object is, and, under the direction of the health officer, remove it, dead or alive, to a place of safety. Such warrant shall also authorize the officer, if so directed by the health officer for prudential reasons, to kill an infected animal before removal.' Plaintiff further avers that the defendant Rhett Goode was on the day aforesaid health officer of the said city of Mobile. Plaintiff further avers that on the day aforesaid the said defendant, Rhett Goode, acting as such health officer for and on behalf of the said city of Mobile, ordered the said mule of plaintiff to be killed, and said mule was killed by a police officer in obedience to such order. Plaintiff further avers that there was no complaint made by said health officer to the recorder, as provided by said municipal law, nor was there any evidence taken before the recorder of disinterested and reputable citizens, that said mule had glanders and was dangerous to the health of man or beast, or was diseased and thus dangerous, as is also provided by such ordinance, nor was there any warrant directed by the recorder, after an investigation by him, to any

police officer requiring him to kill said animal, as is also required by law."

To the entire complaint the city of Mobile demurred upon the ground that the complaint fails to allege that said claim was presented to the general council of the city of Mobile, as required under the charter of said city. This demurrer of the city of Mobile was sustained. Thereafter, upon motion of the city of Mobile, it was ordered that the cause be dismissed as to the city of Mobile.

The defendant, Rhett Goode, then filed two pleas, which were as follows: "(1.)   The defendant, Rhett Goode, for answer to the complaint, saith he is not guilty of the matters as alleged therein."   (2.) "And now comes the defendant in this cause and for further plea in this behalf says *actio non,* because he says that said horse was afflicted with glanders, an infectious and contagious disease, and that he ordered the same killed, as the executive officer of the board of health of Mobile county, as he was required to do under the laws of Alabama." Issue was joined upon these two pleas.

The plaintiff introduced witnesses who testified that the mule belonging to the plaintiff, valued at from $150 to $200, was killed by one Gilroy, an officer of the city of Mobile; that when said Gilroy came to kill the mule he stated that he was acting under the orders of Dr. Rhett Goode, health officer of the city of Mobile. After the introduction of this testimony, the plaintiff moved the court to strike out the third count of the complaint, which was granted without objection on the part of the defendant. Thereupon the defendant moved the court for leave to withdraw his special plea numbered 2, which motion was granted without objection on the part of the plaintiff.

The evidence for the defendant tended to show that the mule which was killed had a disease known as acute glanders; that the said disease was dangerous to both man and beast and was infectious and contagious, and that a veterinary surgeon reported the fact that the mule was so afflicted to the health officer of the city of Mobile, in which city the mule was kept at the time he was killed.

[Barrett v. City of Mobile.]

Dr. Rhett Goode, the defendant, testified that a veterinary surgeon reported to him that a mule belonging to the plaintiff had the disease of glanders; that thereupon he issued instructions to have the mule killed, provided there was no objection on the part of the owner of the animal; that in so ordering he acted for the board of health of the city of Mobile under the authority conferred upon the city by its charter, and that in giving said instructions to the sanitary officer to kill said mule, he acted in the capacity of said health officer.

There was no evidence introduced by the defendant to show that there was any special order issued conferring power upon him to have destroyed or killed any animal having a contagious, infectious or dangerous disease within the corporate limits of the city of Mobile.

Upon defendant offering the testimony showing his official character and the fact that he was informed as to the mule in issue having glanders and the circumstances under which he ordered the mule killed, the plaintiff separately objected and moved the court to exclude such testimony. The court overruled each of such objections and motions, and to each of these rulings the plaintiff separately excepted.

Upon the introduction of all the evidence the plaintiff requested the court, among other charges, to give the general affirmative charge in her behalf. The court refused to give the several written charges requested by the plaintiff, to the refusal to give each of which the plaintiff separately excepted.

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

JOHN E. MITCHELL, for appellant.—The demurrer of the city of Mobile to the complaint should not have been sustained. The provisions of the charter requiring presentations of claims related only to claims *ex contractu.*—*Snyder v. Albion,* 71 N. W. Rep. (Mich.) 475; *Jung Stevens Point,* 43 N. W. Rep. (Wis.) 513; *Bradley v. Eau Claire,* 14 N. W. Rep. (Wis.) 10; *Lay v. Ad-*

*rian,* (Mich.) 42 N. W. Rep. 959; Dillon Municipal Corporations, § 937.

The court erred in admitting the testimony of the veterinary surgeon relating to his reporting to the defendant that the mule in question had glanders. The cause was tried upon the plea of the general issue. There is no principle of law better settled .than that matters of justification can not be proven under the general issue.—*Womack v. Bird,* 63 Ala. 505; *Olmstead v. Thompson,* 91 Ala. 133; *Lunsford v. Walker,* 93 Ala. 38; *Daniel v. Hardwick,* 88 Ala. 559; *Scarborough v. Blackman,* 108 Ala. 658; *Petty v. Dill,* 53 Ala. 645; 1 Chitty Pleadings (16th Am. ed.), 653, 658; 2 Greenleaf Evidence, § 274.

B. B. BOONE, *contra.*—The complaint should have averred that the claim sued on had been presented as required by the charter of the city of Mobile. This charter provision is similar to the statutes requiring that before suit can be maintained against a county, claim must have been presented to the court of county commissioners and disallowed or reduced by the court. *Shinbone v. Randolph County,* 56 Ala. 183; *Schroeder v. Colbert County,* 66 Ala. 137.

SHARPE, J.—By the charter act of the city of Mobile (Acts, 1896-97, p. 542), it is provided "That no claim against the city of Mobile shall be sued on until a statement thereof, giving date of accrual, name and residence of original claimant, and of assignee, if any, circumstances and amount, shall have been filed with the clerk for consideration of the general council, and either rejected by them or held for sixty days without action."

The word "claim" as used in this provision is comprehensive enough to include charges against the city arising in tort as well as *ex contractu.* The legislative intention was to protect the city from expenses of unnecessary litigation by affording it opportunity to settle and discharge its liabilities without suit. The same necessity exists for such protection in respect to

torts as in other claims, and without applying the requirement to them the legislative intention cannot be wholly carried out.

The right to sue the city without first presenting the claim is taken away by the statute. In bringing suit the plaintiff should show by his complaint a cause for which an action will lie. To that end the complaint should aver presentation according to the statutory requirement. For want of such averment the complaint in the present case was subject to the demurrer interposed to it as a whole.

We are aware that there is conflict in the authorities both as to whether the word claims as used in statutes requiring presentation before suit, applies to tort and also as to the necessity of averring compliance with the requirement. We think, however, that our conclusions on both those questions are supported by the decision of this court made with reference to an analogous requirement respecting the presentation of claims against counties before suit, and found in section 13 of the present Code. See *Schroeder v. Colbert County*, 66 Ala. 137; *Shinbone v. Randolph County*, 56 Ala. 183.

Amendments to the complaint left it standing against the defendant Goode alone, on a count in trespass joined with a count in trover, and not guilty was the only plea. The two causes of action proceed on different theories and are subject to dissimilar defenses.

In trespass *de bonis asportatis* as in other species of trespass a defense based on legal authority for the taking complained of is in justification of the act and like other pleas in confession and avoidance, must be pleaded specially; otherwise the defense is not allowed to be proved.—*Womack v. Bird*, 51 Ala. 504, s. c. 63 Ala. 500; Chitty Plead. (16 Am. ed.), 532. Though, the fact that the defendant acted under a supposed though invalid authority, may, according to the more recent decisions of this court, be proven for the limited purpose of mitigating or preventing exemplary damages.—*Stephenson v. Wright*, 111 Ala. 579; *Boggan v. Bennett*, 102 Ala. 400.

In trover a valid authority for appropriation or destruction of property involved may be proven under the

general issue and in bar of the action.—Gould's Plead.,
§ 57; 9 Bac. Abr., 672; *Young v. Cooper,* 6 Exch. 259;
*Kline v. Husted,* 3 Caine (N. Y.), 275; *Pemberton v.
Smith,* 3 Head. (Tenn.), 18; *Miller v. Knapp,* 19 Atl
Rep. (Penn.), 555.

In Gould's Pleading, *supra,* it is laid down that "as
the conversion, which is the gist of the action in trover
is *ex vi termini,* a tortious act which cannot in law
be justified or excused, it is manifest that any plea
alleging matter of justification or excuse (as a license
from the plaintiff—an authority derived from the law,
etc.,) is equvalent to the plea of not guilty; since it
must involve a denial of the conversion."

There are decisions opposed to the admission of such
a defense without a special plea and the question seems
not to have been expressly decided by this court, though
as favoring the rule we announce, there is an intimation
in *Hopkinson v. Shelton,* 37 Ala. 306, where in pass-
ing on a plea setting up that the property alleged to
have been converted was taken under execution, the
·court said that in view of our statute allowing a plurality
of pleas "it was no objection to the second plea that it
amounted to the general issue." A conversion is
necessarily wrongful and cannot be justified. Where
the appropriation is rightful there is no conversion;
therefore a plea showing that fact directly contravenes
the complaint, and is not in confession and avoidance or
in justification.

Under the pleading in the present case it was compe-
tent under the count in trover, and in bar of it. to show
by proof if it existed that the animal was killed in pur-
suance of a reasonable police regulation in promotion
of the public health.—Tiedeman on State and Fed. Cont.
Per. and Prop., 828.

The evidence actually introduced tending to show the
defendant's official character, the information on which
and the circumstances under which he acted in order-
ing the animal to be killed were admissible under the
count in trespass as tending to show he acted in good
faith and as bearing on the question of exemplary dam-
ages. But the evidence did not tend to show an abso-
lute defense to either count.

In a general way the duties and authority of county health officers are prescribed by chapter 58 of the Code. The powers given them as executive officers in respect of the destruction of property to prevent the spread of infectious diseases are required to be exercised "under the direction and control of the county board of health and in accordance with the health laws of the State." § 2436. The county board of health may investigate "cases of malignant, pestilential, infectious, epidemic and endemic diseases occurring in the county, and the causes thereof ,and take such steps as may be necessary for their abatement or prevention."—§ 2429. "The court of county commissoners, or the proper corporate authorities of any city or town, may, jointly or separately, invest the county board of health with such executive powers and duties as may be deemed necessary for the preservation and promotion of the public health, and for the prevention of the introduction or spread of contagious or infectious diseases; such powers to be exercised, and such duties to be performed under such rules and regulations as may be determined upon between such board and such court, or corporate authorities."—§ 2431. And the charter of Mobile provides that the general council "may make, ordain and declare such by-laws and ordinances for and concerning the removal of nuisances and the prevention and extinction of contagious or infectious diseases, and in giving effect to these powers may act in co-operation with the board of health." In the absence of some regulation made or special authority conferred by the board of health, the court, or the corporate authorities, the health officer of Mobile as such has no authority to destroy property whether infected or not, except when acting under a warrant from a justice or mayor as provided by section 2393. Here there was nothing to show that the defendant was authorized in either of the modes indicated, or in any legal mode, to order the destruction of the animal; consequently there was nothing to justify that action or to divest it of a tortious aspect and the plaintiff's right to recover was made out. Therefore, the refusal to instruct the jury affirmatively in her favor

[Western Union Telegraph Co. v. White & Co.]

was error for which the judgment must be reversed. It is unnecessary to specifically pass on the other charges. Let the judgment be reversed and the cause remanded.